IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**09/13/2011**

| | |
|---|---|
| IN RE ) | |
| ) | |
| FAITH EMPOWERED, LLC, ) | CASE NO. 09-30173-H3-11 |
| ) | |
| Debtor ) | |
| ) | |

MEMORANDUM OPINION

The court heard it's Order to Show Cause for dismissal of the above captioned bankruptcy proceeding (Docket No. 151) and MetroBank, N.A.'s Motion to Convert To Chapter 7 (Docket No. 164) and after consideration of the Response (Docket No. 165) filed by Faith Empowered, LLC, Debtor, the Reply filed by MetroBank, N.A. (Docket No. 166), the pleadings, docket sheet, entire file and argument of counsel, the court makes the following Finding of Fact and Conclusions of Law, and converts the case to chapter 7. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Debtor, designated as a non-profit real estate development limited liability company, filed a voluntary chapter 11 bankruptcy petition on January 5, 2009.  Debtor consists of three member entities, Pleasant Grove Community Development Corporation, New Bethlehem Community Development Corporation, and Product Marketing International, Inc., each having a 33 1/3

percent ownership interest in Debtor.  List of Equity Security Holders, Docket No. 10.  At the time of the bankruptcy filing, Debtor owned approximately 17.5 acres of real property consisting of a 7.375 acre tract of undeveloped real estate and a 10.275 acre detention pond (the "property").  MetroBank, N.A. held a first lien on the Property and on all of Debtor's equipment, accounts, inventory and general intangibles.  Docket No. 58, Agreed Order of MetroBank and Debtor.  The Deed of Trust evidencing MetroBank's security interest was executed on behalf of Debtor and signed by its member entities.  Charles L. Jackson signed under the title of "Pastor" on behalf of Pleasant Grove Community Development Corporation, Melvin L. Lewis, Sr. signed under the title of "Pastor" on behalf of New Bethlehem Community Development Corporation, and Dan Nip signed under the title of "President" on behalf of Product Marketing International, Inc.  MetroBank Exhibit No. 8.  Jackson, Lewis and Nip signed as guarantors on Debtor's loan with MetroBank.

In 2005, Debtor sold one acre of the property to Traditions Bank, with a portion of the purchase money being paid to MetroBank (for a release of its lien) and a portion being placed in an escrow account.  The escrowed funds were to secure certain obligations of the Debtor to Traditions Bank, including the construction of a road on the property.  The road was never built and per the bankruptcy court's approval in July 2010, a compromise divided the escrowed funds, $587,206.50, with Debtor

receiving $74,784.34 (to be used to fund its plan) and Tradition Bank receiving $512,422.16. Docket Nos. 104 and 116.

As of the petition date, Debtor owed MetroBank approximately $1,599,965.82. On December 1, 2009, MetroBank foreclosed its lien rights against the real property at a non-judicial foreclosure sale for the high credit bid of $1,200,000, leaving a deficiency claim. MetroBank Exhibit No. 9. Subsequent to the foreclosure sale, MetroBank paid delinquent ad valorem taxes in the amount of $198,950.94. MetroBank amended its proof of claim on November 11, 2011 and seeks a total of $511,416.76[1], of which $74,784.34 is designated as secured by MetroBank's blanket lien on Debtor's assets. Debtor's sole remaining asset is the sum of $74,784.34 received per the compromise with Tradition Bank. Currently, this money is being held in the trust account of Debtor's bankruptcy counsel.

Debtor's Amended Disclosure Statement was approved on September 24, 2010 (Docket No. 133) and the proposed Plan provided for distribution of the $74,784.34 settlement funds. MetroBank objected to confirmation and at the confirmation hearing on November 9, 2010, Debtor announced that an amended plan was to be filed. No amended plan was filed and the court

---

[1] As of the petition date, Debtor owed MetroBank $1,599,965.82. After deducting the foreclosure bid of $1,200,000, a deficiency of $399,965.82 remained. In arriving at the figure on the amended proof of claim, $511,416.76, MetroBank deducted a $87,500 post-petition adequate protection payment made by Debtor and added the $198,950.94 MetroBank paid for delinquent ad valorem taxes.

issued a Show Cause for dismissal for failure to prosecute the case. At the Show Cause hearing, Debtor announced that it was not opposed to dismissal of the case and advised the court of the pendency of a state court suit filed by MetroBank against the guarantors for collection of MetroBank's deficiency claim. Debtor is not a party to the state court suit. Default Judgments were rendered against Lewis and Nip but Jackson filed counterclaims in the state court case which include allegations that MetroBank has no deficiency claim as a result of its intentional underbidding at the foreclosure sale.

MetroBank orally moved for conversion at the Show Cause hearing in bankruptcy court. Pursuant to the court's Order (Docket No. 162), MetroBank filed the written motion which is presently before the court. MetroBank moves to convert the case on the basis that there has been a substantial loss to the estate and there is an absence of any reason any likelihood of rehabilitation and failure to timely confirm a plan by November 15, 2010. 11 U.S.C. §§ 1112(4)(A) and 1112(4)(J). MetroBank claims that conversion is in the best interests of the creditors and the estate so the court can administer Debtor's remaining asset, $74,784.34.

Section 1112(b) of the Bankruptcy Code provides, in pertinent part:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and

after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause...

(4) For purposes of this subsection, the term 'cause' includes--

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
> (K) failure to pay any fees or charges required under chapter 123 of title 28;
> (L) revocation of an order of confirmation under section 1144;
> (M) inability to effectuate substantial consummation of a confirmed plan;
> (N) material default by the debtor with respect to

>   a confirmed plan;
>   (O) termination of a confirmed plan by reason of
>   the occurrence of a condition specified in the
>   plan; and
>   (P) failure of the debtor to pay any domestic
>   support obligation that first becomes payable
>   after the date of the filing of the petition.

11 U.S.C. § 1112(b).

The list of items identified as constituting cause for conversion or dismissal pursuant to section 1112(b)(4) is non-exclusive.  See In re Global Ship Systems, LLC, 391 B.R. 193 (Bankr. S.D. Ga. 2007); In re The 1031 Tax Group, LLC, 374 B.R 78 (Bankr. S.D.N.Y. 2007).

Courts consider the totality of the circumstances in determining whether there is cause for dismissal.  Matter of Atlas Supply Corp., 857 F.2d 1061 (5th Cir. 1988).  In the instant case, the automatic stay has been lifted on Debtor's real property and the only remaining asset is the sum of approximately $74,784.34.  Debtor failed to timely file or confirm a plan of reorganization.  MetroBank asserts a deficiency claim which is currently contested in a pending state court suit which MetroBank initiated.

Charles L. Jackson, the representative of Debtor and Pastor of Pleasant Grove Missionary Baptist Church, testified that he authorized the bankruptcy filing.  The petition reflects that Jackson signed the petition as Debtor's "Manager."  Jackson testified that, prior to the bankruptcy filing, Dan Nip managed the affairs of the Debtor.  Jackson testified that Pleasant Grove

Missionary Baptist Church and New Bethlehem Church used their money to fund the Debtor and that Nip did not make any monetary contributions.  Jackson testified that prior to bankruptcy, Debtor attempted to develop and market the property and Nip was in possession of all of the Debtor's money.  Jackson testified that after the property did not sell, Nip stepped down as the manager of the Debtor and that, around the time the bankruptcy case was filed, Nip turned over all notes, receipts, and other documents related to the property and its development.  Jackson testified that prior to this, he was not involved in the Debtor's management.  Jackson testified that he had no knowledge as to the amount of the claims against the Debtor, the identify of creditors, or whether the creditors are still owed money.  He also testified that he did not know if a plan was confirmed or whether there was a deadline to do so.

      Jackson testified that he has an interest in Pleasant Grove Community Development Corporation and that he asserts an interest in the $74,784.34 despite Debtor's not being a party to the state court suit.  Jackson testified that Debtor never had any operating funds of its own and that he, Jackson, through Pleasant Grove Missionary Baptist Church, has been the primary person to provide funds to the Debtor to pursue the bankruptcy proceeding and the state court case.  Pleasant Grove Missionary Baptist Church, of which Jackson is Pastor, filed a request for payment of an administrative expense in the amount of $199,172.34

for expenses paid on behalf of Debtor for preservation of the estate. Docket No. 136.

Jackson requests that the instant bankruptcy case be dismissed as there is no property with which to reorganize, and he wants his future efforts to be focused on the pending state court case, which he believes will address whether MetroBank has a deficiency claim. Jackson testified that if the instant bankruptcy case were dismissed, the $74,784.34 would be used to pay any known creditors.

In Amended Schedule F, Debtor listed unsecured nonpriority claims in the amount of $408,146.26, none of which were designated as disputed, contingent or unliquidated. As of April 20, 2011, Debtor's claims register reflects that there were unsecured claims filed in the amount of $708,521.92, secured claims filed in the amount of $283,262.86 and priority claims filed in the amount of $17,541.29. MetroBank Exhibit Nos. 1, 2 and 4. Jackson testified that he did not know if these creditors were still owed money.

Based upon the totality of the circumstances, including the total amount of claims filed against the estate in the instant case, the lack of knowledge by Jackson as to the information listed on Debtor's schedules, and Jackson's testimony that Nip was the manager of the Debtor and had possession of all of the Debtor's funds pre-petition, and that Jackson has been the primary person to provide Debtor with money to pursue the instant

bankruptcy case, the court finds that it is in the best interests of the creditors and the estate to convert this case to a chapter 7 proceeding.

Based upon the above findings and conclusions, the court will a enter separate Judgment in conjunction with this Memorandum Opinion converting the case to a chapter 7 proceeding.

Signed at Houston, Texas this 13th day of September, 2011.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE